IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DUSTIN OSLAGE,

                Plaintiff,

    v.                                              OPINION and ORDER

KILOLO KIJAKAZI,                              21-cv-709-jdp
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Dustin Oslage seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Oslage was not disabled within the meaning of the Social Security Act. Oslage contends that administrative law judge (ALJ) Ahavaha Pyrtel erred by: (1) failing to adequately support her conclusion that Oslage could perform sedentary work with only some physical limitations; (2) failing to adequately address the effects of Oslage's obesity; (3) not adequately accounting for Oslage's moderate limitations in concentration, persistence, and pace (CPP) in the residual functional capacity assessment (RFC); and (4) mishandling the opinions of the state agency psychologists.[1] For the reasons explained below, the court will affirm the commissioner's decision.

---

[1] Oslage also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But this court has rejected that argument multiple times. S*ee Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). And Oslage cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

BACKGROUND

Oslage sought benefits based on physical and mental impairments, alleging disability beginning in September 2019, when he was 24 years old. R. 13, 25.[2] After his application was denied initially and on reconsideration, he requested a hearing before an ALJ. In a May 2021 decision, the ALJ found that Oslage suffered from the following severe impairments: reconstructive surgery of the right hip and knee (weight bearing joints), degenerative disc disease of the lumbar spine, osteoarthrosis, and depression. R. 15. After finding that Oslage's impairments weren't severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Oslage the RFC to sedentary work with additional physical, mental and environmental restrictions. R. 16-18. Based on the testimony of a vocational expert, the ALJ found that Oslage was not disabled because he could perform a significant number of jobs in the national economy, including as a compact assembler, document preparer, and machine tender. R. 26. The Appeals Council declined review. R. 1-6. Oslage now appeals to this court.

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

---

[2] Record cites are to the administrative transcript located at Dkt. 8.

ANALYSIS

Oslage asserts that the ALJ committed errors that fall into three main categories. The court will consider each category in turn.

**A.  Physical limitations in RFC**

There is no dispute that the ALJ adopted a more restrictive physical limitations for Oslage than those recommended by the state medical consultants, Dr. Pat Chan and Dr. Marta Madera.[3] At the initial level of review, Dr. Chan found that Oslage was capable of performing a full range of light work. R. 68-70. On reconsideration, Dr. Madera mostly agreed but limited Oslage to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to hazards. R. 84-86.

The ALJ determined that the light work restriction was inconsistent with Oslage's occasional antalgic gait and reduced right lower extremity strength, so she limited Oslage to sedentary work. R. 23-24 (citing R. 294-314 and 327-591). Persuaded in part by Dr. Madera's opinion, she further limited Oslage to occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; never working at unprotected heights or around moving mechanical parts; and alternating between sitting and standing every 30 minutes. R. 18, 24.

Oslage raises four challenges to the ALJ's assessment of his physical limitations. But the court does not find any of these arguments persuasive.

---

[3] The record does not contain any opinion from Oslage's treating providers except for a return-to-work letter from a nurse practitioner. The ALJ found that opinion partially persuasive. But the parties do not discuss this opinion, so neither will the court.

First, Oslage seems to criticize the ALJ for not relying on any medical opinion. But the ALJ isn't required to rely entirely on a physician's opinion in ascribing an RFC or adopt any one opinion in full. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (ALJ not required to adopt a particular opinion to support the RFC); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (ALJ "not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians.").

Second, Oslage says that the ALJ erred by failing to explain her findings and why she did not find Oslage limited to part-time sedentary work. But contrary to Oslage's contention, the ALJ explained the basis for the physical restrictions in the RFC. She discussed Oslage's severe impairments and the evidence relating to each of them, and she gave reasons for why she wasn't persuaded that Oslage was as limited as he said he was. R. 18-20. Nonetheless, the ALJ assessed more restrictive limitations than those recommended by Dr. Madera to account for Oslage's alleged difficulties with sitting, standing, and walking. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (noting that RFC assessment that "was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented").

Third, Oslage contends that the ALJ's opinion is internally inconsistent because she recognized Oslage's gait abnormality in rejecting the state medical consultants' opinions but cited references to his normal gait in not fully crediting his subjective symptoms. But the fact that the ALJ noted that Oslage had an abnormal gait "at times," R. 23, and a "normal" or "remarkably good" gait at other times, R. 21, does not mean that the ALJ erred in evaluating the medical evidence. Rather, the ALJ believed that Oslage required some standing and walking

limitations but remained capable of sedentary work. Moreover, Oslage does not explain how a gait abnormality would preclude him from *sedentary* work.

Finally, Oslage says that the ALJ should have explained specifically why his abnormal gait, chronic pain, and use of a cane didn't support greater restrictions. *See* Dkt. 13, at 18-19 (citing R. 648, 657 (need for medial branch blocks and radiofrequency ablation on July 13, 2020); R. 444, 502, 579, 621 (Oslage's reports of activities that made pain worse); R. 303 (August 2019 right knee x-ray showing metallic debris and slight lucency); R. 297, 427, 583 (abnormal gait); R. 300, 409 (Oslage would benefit from use of cane as needed)). But the medical evidence cited by Oslage does not quantify his functional difficulty or otherwise show that he cannot perform a limited range of sedentary work. *See Vang v. Saul*, 805 F. App'x 398, 401 (7th Cir. 2020) (rejecting argument that ALJ was required to point to evidence showing that the plaintiff could meet a specific exertional level when the claimant failed to cite evidence that he was more limited than the ALJ found). In addition, the state medical consultants' additional explanation of the RFC makes clear that they were aware of Oslage's gait abnormality, pain, and as-needed use of a cane but still found him capable of light work with no or few restrictions. *See* R. 69-70, 86-88. Because Oslage doesn't identify any unaddressed medical evidence that shows he would be entitled to more restrictive physical limitations, he is not entitled to remand. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

In sum, the ALJ's handling of the state medical consulting opinions and evidence related to his physical limitations does not require a remand.

## B.  Obesity

At step 2 of her analysis, the ALJ listed Oslage's body mass index and stated that Oslage's obesity was not a severe impairment because it "does not cause more than minimal

limitations on [his] ability to perform basic work functions." R. 16. Oslage argues that the ALJ violated Social Security Ruling (SSR) 19-2p by failing to consider explicitly the limiting effects of his obesity in combination with his other impairments. *See* 2019 WL 2374244 (SSA May 20, 2019); *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). But he identifies no records that refer to any limitations caused by his obesity, nor does he explain how his obesity affects his ability to work other than to suggest that it generally exacerbates his impairments. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (rejecting argument that ALJ's failure to consider obesity required reversal when the plaintiff "does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk").

Oslage points out that his treating physician advised him of the benefits of weight reduction in managing his chronic pain. *See* R. 662 (June 30, 2020 telehealth visit). But both the ALJ and Dr. Madera cited this telehealth note in reviewing Oslage's treatment history, *see* R. 20-22 and 88, so it is reasonable to infer that they were aware of the weight loss recommendation. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (ALJ error in failing to discuss obesity "could conceivably be harmless if the ALJ indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed Arnett's obesity."). Oslage's assertion that his obesity "would likely" affect "the weight bearing nature" of his severe impairments, Dkt. 13, at 31, is merely speculative. *See Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (finding same).

So the ALJ's failure to be more explicit about the limiting effects of Oslage's obesity, which appear to be none, was at most harmless error. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("An ALJ's failure to explicitly consider an applicant's obesity is harmless if the

applicant did not explain how her obesity hampers her ability to work.") (citations and internal quotation marks omitted).

## C.  Mental limitations in the RFC

The ALJ stated that she included a limitation to simple, routine tasks in the RFC to account for Oslage's moderate limitations in CPP related to his depression, concentration deficits, difficulty completing tasks, and sleep disturbance. R. 17, 21. Oslage says that the ALJ's finding is flawed for three reasons: (1) her findings are internally inconsistent; (2) she failed to provide good reasons for discounting Dr. Holly's narrative opinion that Oslage would have occasional difficulty completing a normal work week without interruptions; (3) she failed to address the consistency of the two state psychologist opinions; and (4) she failed to adequately address Dr. Warren's narrative opinion.

### 1.  Internal inconsistencies

Oslage says that the ALJ failed to explain why she found at step three that Oslage had moderate limitations in CPP but later found at step four that Oslage could perform simple, routine tasks because he regularly presented to his providers as able to attend and maintain focus. *See* R. 23-24. But these findings are not inconsistent.

The ALJ was not required to expressly address her findings at step three in Oslage's RFC. A rating at step three is a generalized assessment of the claimant's overall abilities in a broad area, not a specific impairment. As this court has explained before, having moderate limitations in one of the four broad areas of mental functioning only places the claimant into a general category. *Rabitoy v. Berryhill*, No. 17-cv-495, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018).

At step four, both the ALJ's RFC assessment and the hypothetical posed to the vocational expert must incorporate any limitations supported by the claimant's medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The question is whether the RFC adequately accounts for Oslage's demonstrated psychological symptoms. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Put another way, a plaintiff cannot show a need for "specific restrictions in his residual functional capacity simply because of the 'moderate' designation; he must have evidence of that need." *Lockett v. Saul*, 834 Fed. App'x. 236, 239 (7th Cir. 2020). To be entitled to remand, the claimant must cite evidence that his specific limitations would prevent him from performing work under the terms of his RFC. *See Jozefyk*, 923 F.3d at 498. As discussed below, Oslage has failed to make this showing.

### 2.  State psychologist opinions

Both Dr. Holly and Dr. Warren opined that Oslage had moderate limitations in maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. R. 70-71, 89-90. In her narrative assessment, Dr. Holly concluded that Oslage's depressive symptoms would cause him occasional but not frequent difficulty in completing a normal work week without interruptions. R. 71. In contrast, Dr. Warren concluded that Oslage was able "to sustain the mental demands associated with carrying out simple tasks over the course of routine workday/workweek within acceptable attention, persistence, pace tolerances." R. 89.

Contrary to Oslage's contention, the ALJ explained that she found Dr. Holly's narrative conclusion not fully consistent with the record, which showed that Oslage regularly presented

to his providers as able to attend and maintain focus. R. 24 (citing, *e.g.*, R. 597). Oslage argues that the ALJ failed to explain how the ability to maintain focus equates to persistence. But the ALJ was entitled to rely on Dr. Warren's opinion that Oslage could sustain the demands of simple, routine work, including persisting at a tolerable level. Further, the ALJ made clear earlier in her opinion that Oslage was able to "engage in activities demanding some ability to see a task through to completion," such as driving a car, helping a friend with his business, and completing projects. R. 17, 22.

Oslage seems to fault the ALJ for not including specific persistence or pace limitations in the RFC assessment. But he has not shown a need for any specific restrictions other than the moderate designation and Dr. Holly's narrative statement. *See Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) ("So Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the "moderate" designation; he must have evidence of that need, and he cites none."). His citations to medical evidence make clear that he suffers from depression. *See* Dkt. 13, at 16-17 (citing record). But without further evidence of a need for a specific limitation, Oslage cannot show that he is entitled to remand. *See Loveless*, 810 F.3d at 508.

9

ORDER

IT IS ORDERED that that the decision of the acting commissioner is AFFIRMED. The

clerk of court is directed to enter judgment in favor of the acting commissioner and close this

case.

Entered August 17, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge